IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 4:23-cr-20 |
| ) | |
| JOHN MAGOBET, ) | |
| ) | |
| Defendant. ) | |

### SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorney Devon E.A. Heath, files this Position on Sentencing and hereby represents that it has reviewed the Probation Officer's Pre-Sentence Report (PSR) and that it does not dispute any of the factors or facts set out herein. Honoring its obligation pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and the Plea Agreement struck between the parties in this case, the United States respectfully recommends a sentence within the applicable advisory guidelines range for the defendant's conduct. Specifically, the United States recommends a sentence of Sixty (60) months of imprisonment.

**Statutory Considerations**

The defendant pled guilty on May 17, 2023 to: Count One, Dealing Firearms without a license, in violation of U.S.C. § 922(a)(1)(A), which carries a sentence of not more than five (5) years imprisonment, not more than three (3) years' supervised released, not more than a $250,000 fine, and a $100 special assessment; Count Four, Make a False Statement During Purchase of a Firearm, in violation of U.S.C. §§ 922(a)(6), 924(a)(2), which carries a sentence of not more than

1

ten (10) years imprisonment, not more than three (3) years' supervised release, not more than a $250,000 fine, and a $100 special assessment and; Count Nine, Possession of a Firearm with Serial Number Removed, Obliterated, or Altered, in violation of 18 U.S.C. §§922(k) and 924(a)(1)(B), which carries a sentence of not more than five (5) years imprisonment, not more than three (3) years' supervised released, not more than a $250,000 fine, and a $100 special assessment. The Court may sentence the defendant to any term of imprisonment up to the statutory max for each count.

**Impact of the Plea Agreement**

The parties entered into a plea agreement and the United States acknowledges the defendant's acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels pursuant to USSG § 3E1.1(a). Additionally, because the defendant's timely notification of his intention to enter a plea of guilty, permitted the United States to avoid preparing for trial and permitted the United States and the court to allocate their resources efficiently, the United States filed a motion for an additional point reduction under USSG § 3E1.1(b).

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a PSR which detailed the offense of conviction and the characteristics of the defendant. In calculating the offense level for the defendant, the probation office grouped Counts One (1), Four (4), and Nine (9) under U.S.S.G. § 3D1.2(c). The base offense was calculated to be fourteen (14) under U.S.S.G § 2K2.1(a)(6)(C). The offense involved seven (7) firearms resulting in a two (2) level enhancement under U.S.S.G § 2K2.1(b)(1)(A). Firearms had altered obliterated serial numbers resulting in a four (4) level enhancement under U.S.S.G § 2K2.1(b)(4)(B). The defendant engaged in the trafficking of

firearms resulting in a four (4) level enhancement under U.S.S.G § 2K2.1(b)(5). The defendant possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense resulting in a four (4) level enhancement under U.S.S.G § 2K2.1(b)(6)(B). These enhancements resulted in an adjusted base level of twenty-eight (28). Applying the three-level reduction addressed above, the defendant's total offense level is 25.

The probation officer also calculated a criminal history level for the defendant. The criminal history score is zero (0). The total of zero (0) criminal history points establishes a criminal history category of I pursuant to U.S.S.G. Chapter 5, Part A. Under the 2023 amendments to the Sentencing Guidelines, which take effect on November 1, 2023, defendants with zero criminal history points, who otherwise meet specific criteria, will receive a two-level reduction to their offense level, pursuant to U.S.S.G § 4C1.1. However, the defendant does *not* qualify for the reduction because the defendant possessed a firearm in connection to the instant offense.

As a criminal history category I defendant with an offense level of 25, the defendant's sentencing guidelines range is 57 – 71 months.

**Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As outlined *supra*, the appropriate sentencing range under the guidelines is 57 to 71 months. The United States will now address the statutory factors that support its request for a sentence of sixty (60) months.

A.   Nature of the Offense

The defendant's offenses of conviction involve the defendant making false statements during the purchase of firearms so that he could deal firearms, some with obliterated serial numbers, without a license, to whomever he pleased with no regard to the criminal history of whom

he was dealing with and no regard as to how these firearms would impact violent crime. Firearms are regulated by licensed dealers in an attempt to protect the communities they ultimately end up in. Making false statements during the purchase of firearms taints the purpose of the regulation. To go on further and deal the firearms to persons who have *not* been properly screened destroys the safety regulation all together. Furthermore, the defendant intentionally removed/obliterated serial numbers to further destroy the system our country uses to regulate firearms in our communities. The defendant showed reckless disregard for the communities' safety when he dealt firearms to individuals with questionable criminal histories. Based on the defendant's own words and actions it is fair to say he must have been *very* aware what these, most likely prohibited, individuals were going to use these firearms for.

    The defendant attempted to ensure that any illegal activities in which these firearms were used could not be traced back to his reckless conduct, indicating he *knew* or had reason to believe they would be used for violence. "Don't sell to somebody that's going to do something stupid…that's why I deleted your numbers…let me know if it happens so I can report them stole, this way I cover my ass, I cover your ass.", "erase, erase, erase." After discovering an answer of potential violence, the defendant advised, "that's the only reason I do that" (referring to removing the serial numbers). The defendant went on to stress the importance of removing the serial numbers and gave a "tutorial" on how to rid firearms of serial numbers. These are statements made by the defendant. The defendant advised the buyer that he did not want to know what the buyer was doing with the firearms and how he did not want to raise suspicion by over purchasing or do anything to tip off any federal agency.

    Additionally, after providing a buyer with three Glock firearms he advised the buyer that he would provide the buyer with a pelican case which could be locked to impede any future police

4

searches. On one occasion the buyer advised that the Glocks they desired where going to have Glock switch style machine gun conversion devices installed so that they could be resold as machine guns. This did not deter the defendant from selling these Glocks to the buyer, instead the defendant told the buyer that kits could be purchased for converting semi-automatic guns to machine guns from the Federal Firearm Licensed dealer he utilized and also advised the buyer that the firing pin of the firearms he sold them could be converted to a "full auto" machine gun by filing down the firing pin.

Here the defendant used his constitutional freedom to buy and possess firearms and turned it into a self-serving means to an end which resulted in *seven* firearms potentially ending up in the hands of prohibited people who most likely intended to use these firearms, or worse modified firearms, in acts of violence that plague our communities. The nature of the defendant's offenses is clearly inherently dangerous. The defendant severely tainted our country's ability to properly regulate firearms. He took a means of protecting our communities and introduced firearms in a manner believed to be directly impacting the violent crime rate in areas where firearms like these end up to include areas beyond the Eastern District of Virginia like the Philadelphia and South New Jersey areas.

  B.  History and Characteristics of the Defendant

The defendant is fifty-eight (58) year old male, born in Philadelphia, Pennsylvania, where is he primarily raised. (PSR pg. 3 & ¶ ¶ 51 - 52). He reported that his mother was "in and out" of mental health institutions due to being diagnosed with multiple personalities, which resulted in a lot of "friction" within his household and reported that it was difficult for him to deal with his mother's multiple personalities and he believed he was mentally abused by her. The defendant reported that he was mostly provided with the basic necessities during his childhood, but stated he

5

did not have adequate adult supervision due to his parents' busy work schedules, and described not receiving the love and nurturing, he needed. (PSR ¶ ¶ 52 -54).

According to the defendant he robbed a pizzeria when he was a juvenile because he wanted attention. This resulted in him being placed in foster care where, according to the defendant, he was provided with love and affection that he did not receive from his actual family. The defendant described the experience as positive and noted he was student body president for the facility, Sleighton Farm School (a reformatory school), went on a trip to Disney World, and made honor roll. After being afforded a weekend visit with his family, the defendant reported seeing his father in the midst of a suicide attempt. According to the defendant this event induced an immense amount of stress resulting in a bleeding ulcer which required him to be hospitalized. The defendant indicated that he was released from reformatory school at age 16 and returned home. (PSR ¶ ¶ 55 – 57).

Upon returning home, the defendant reported that he learned his mother had left his father, and his father had begun using drugs and alcohol. According to the defendant, his youngest brother was engaged in narcotics trafficking, and the defendant began using cocaine and trafficking narcotics. The defendant reported having one child when he was 16 years old with a woman he began using drugs with, the child was taken away. The defendant reported that in or around 1994 he began attending narcotics anonymous and maintained a period of sobriety from 1994 to 2009. The defendant married his wife in 1997 and the union produced three children. 22, 24, 13. The defendant reported that he lives in oldest son's home, with his wife and youngest son, who is diagnosed with autism. His wife is his son's caregiver. (PSR. ¶ ¶ 57 - 61).

The defendant reported a list of medical conditions, and medical records received provided what the defendant has been diagnosed with and the current medications he takes. This is all

6

reflected in paragraphs 64 through 66 of the PSR.

The defendant reported a history of attempted suicide and depression, the defendant's past medical history includes depression. A depression screening was completed on March 15, 2023, which resulted in negative findings. (PSR ¶ ¶ 68 -73).  – Mental health screening is recommended.

The defendant clearly struggles with addiction to cocaine. He reported he first used cocaine when he was 16 years old and continued to use cocaine regularly until he was approximately 24 years old, sporadically until he was approximately 38 years old, used regularly in or around 2009 and then regularly from 2017 to 2020. The defendant was clearly using cocaine during pretrial supervision where he time and time again tested positive for cocaine. The defendant appears to have received some substance abuse treatment in 2009 and again in 2023. (PSR ¶ ¶ 76 -78). – Substance abuse treatment is recommended.

The defendant reported attending Longfellow High School, located in Mifflin County, Pennsylvania, He conveyed he stopped attending school in the 9th grade. However, Mifflin County School District, located in Lewistown, Pennsylvania reflect no record of the defendant attending school in that district. The defendant submitted a resume that suggested he went to and graduated from Olney High School, located in Philadelphia, Pennsylvania and also reflects he has several certifications. (PSR ¶ ¶ 80 -82).

The defendant has a lengthy, mostly unverified employment history, where he appears to have held positions like developer, maintenance technician, construction contractor, facility supervisors and private armed security guard. The only employment that was verified was his most recent employment as a maintenance technician at the Windsor Court Apartments, where employer records reflect that there were problems with the defendant's performance and attendance;

however, he was ultimately fired for "time theft." (PSR ¶ ¶ 83 – 101). It should be noted that the defendant advised a confidential source (CS) that while he worked security at a Philadelphia after hours clubs, he would take firearms from people while he worked and would "clean them" to sell them as "drop guns" for "my guys". (PSR ¶ 20).

While the defendant was assessed no criminal history points, his criminal history is telling. In 2011, undercover law enforcement encountered the defendant working as the doorman for an unlicensed bar where liquor and beer was being sold despite the establishment not having a valid liquor license since 2009. The defendant admitted to checking identification and collecting United States Currency. The defendant was convicted of charges stemming from this involvement. (PSR ¶ 43). The defendant was arrested three (3) other times, but the charges were dismissed or withdrawn. (PSR ¶ 48 -50).

There is no doubt that he currently has the love and support from his family, which he will need once he is released from incarceration. The United States understands that the defendant has spent his life struggling with addiction to cocaine. However, it appears to the United States that this defendant has spent most of his life making poor decisions that are self-serving, despite being given "breaks" and chances to restart on a positive path. The United States is also hesitant to believe some of what he has reported to probation as it is clear he has no issue lying or attempting to hide the truth.

Need for Just Punishment

Flagrant disrespect for the law, regardless of the reasoning behind it, deserves adequate punishment. The defendant, time and time again, decided to serve himself at the detriment of the communities he is and was a part of. Not only did he disregard the law, but he also continuously attempted to conceal his and others illegal activity in multiple ways. This behavior is beyond

dangerous and unacceptable. Had this buyer not been an undercover the results of his actions, in the conduct before this Court, could have been dire and continued to directly impact the violent crime rate across multiple states and cities.

The continued decisions and the intentional choice to be self-serving regardless of the consequences to others by engaging in this dangerous behavior warrants just punishment.

C. Deterrence

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that the activities of the defendant is treated with the utmost seriousness. The public must look at the actions of the defendant and know that illegally dealing firearms with obliterated serial numbers to whomever, without proper background checks at the expense of the safety of others will not be tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow. If all defendants who engaged in this type of activity, which the Court knows to be activity that only those with "clean" background checks can engage in, there would be little incentive not to risk this type of crime. Our communities unfortunately have no shortage of individuals who should not and cannot have firearms that are looking to obtain them at any cost. Individuals who have not yet become prohibited need to understand the consequences that come even if they are willing to turn a blind eye to the consequences the actual firearms introduced into these areas produce.

As for specific deterrence, the defendant *chose* to purchase these firearms at the request of someone he believed could not purchase on their own. The defendant *chose* to rid them of their serial numbers. The defendant *chose* to do this not once, but on multiple occasions. The defendant *chose* to put these seven firearms into our communities. At every turn, he was trying to evade

police, evade being discovered. The defendant's repeated choices to put money above the law indicates a lack of concern for consequential action. This is not the first time the defendant made choices that had negative impacts on the community. His actions need consequences. Nothing really seemed to deter this defendant. His own words show that he knew there could be consequences and that did not stop him. The United States understands that sixty (60) months is considered a very long time for an individual with a minimal criminal history, but his choices continued and only stopped because he got caught. Nothing deterred him up to this point.

D.     Need to Protect Society

The damage these seven firearms could have done to the community is clear. Society needs to be protected from this kind of behavior. Granted, as a convicted felon, this defendant will no longer be able to possess or purchase firearms, so in a sense the conviction itself will server to protect society. But, the defendant's continuous deceitful actions are concerning to the United States.

## Conclusion

The United States is concerned with actions like that of the defendant. He put communities at risk, he deceived people to serve his own needs. He was willing to allow these dangerous weapons to end up on our streets in the hands of people who were going to use them to commit violent crimes. There is a real safety issue here. Firearms are inherently dangerous, and society deserves to be protected from individuals who are willing to help perpetuate a violent cycle. A sentence of 60 months is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

JESSICA D. ABER

UNITED STATES ATTORNEY

By: _____/s/_____
Devon E.A. Heath
Assistant United States Attorney
Virginia State Bar No. 83590
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lake Front Commons
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
Devon.Heath@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of October 2023, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system, which will send notification of such filing (NEF) to the following:

Kirsten R. Kmet, Esq
500 East Maine Street
Suite 500
Norfolk, Virginia 23502
E-mail: kirsten_kmet@fd.org

And I hereby certify that I have e-mailed the document to the following non-filing user:

Joshua Coleman
United States Probation Office
600 Granby Street
Suite 200
Norfolk, VA 23510

                                                    /s/           .
Devon E.A. Heath
Virginia State Bar No. 83590
Attorney for Government
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Devon.Heath@usdoj.gov